et al. Let your counsel get seated. Okay, Mr. DiBiaggi, proceed.    Thank you. I'm very pleased to court Val DiBiaggi for the plaintiff. I ask that I maybe reserve one minute for rebuttal. Yes, you may have it. Thank you, Your Honor. I just want to emphasize or try to clarify two factual issues. This isn't a case where the defendant is making a better hot water heater or a more efficient one or improving the U.S. product in any way. This is purely a case of using paperwork to try to increase profit margin. The defendant is well aware that these water heaters are sold cheaper at Sears than whatever the other entities are, and is trying to figure out a way to increase their profit margin, and they did. And the second issue is I want to emphasize the way a normal lease would work. I'm sorry, that's not an issue. That's a statement about a policy position. What is the legal issue? It's in the record. It's plat, and it's the reason why they call these leases instead of sales, because it's a way to increase the profit margin. It is plat in the complaint. It is in the record. But my second point is I ask you to remember how the normal lease works. If you lease a car or an apartment, you sign a lease for, let's say, a $20,000 car for a year, you sign a lease for an apartment for a year a certain percentage a month. You take the car, you put it into your garage, and you move into the apartment. At the end of the year, what happens is there's a revisionary interest. Either the owner of the – well, for one thing, during the year, the warranty runs to the car, the homeowner's insurance runs to the apartment. If you want to sell the garage in which you store the car, you don't have to also sell the car. The owner of that apartment maintains a revisionary interest. And at the end of the year, that apartment or that house has a certain value. If you buy a $20,000 car, at the end of the year, let's say it's worth $18,000, you want to buy the car, you buy it for that market value, or you renew the lease for another year. At the end of that second year, the car may be worth only $16,000, so you buy it for that amount. That's not what happens here. Here they lease these water heaters. And once it's installed in the house, it has no revisionary value. It doesn't matter when the leasee wants to buy it or whatever. The value to the supposed owner of this property is a negative $50. But lest you spend all your time on merits-related issues, you have a substantial statute of limitations issue which you need to overcome. So could I urge you to turn your argument to that? No, I don't see why it would be. Very simply, under Massachusetts law, any violation of truth in lending is What is your basis for federal jurisdiction? The federal truth in lending statute. And what is the statute of limitations for a TILA claim? Well, in this case, I would say it would be four years, because the Massachusetts statute applies. Under the federal exemption granted to the Massachusetts law, there is no But that the state does not determine the federal limitation period under TILA. That's for cases in which there was no preemption. There's a preemption in this case. Massachusetts and two other states are given preemptions from federal truth in lending. There's no case law that says that that does not apply to the limitations provision. The only case I've been able to find was the district court decision by Judge Sierorka, and that I quote in depth in the brief. And there he does a very in-depth analysis. That's why I quoted it, because I didn't want to paraphrase it. Since it's not inconsistent with federal law, it provides more protection to consumers, which is why Massachusetts has the exemption. If it provided less protection or just the equivalent protection, there would be no need for the exemption. Massachusetts law provides greater protection than being a longer statute of limitations, so the Massachusetts statute of limitations applies. And Judge Sierorka himself cited a bankruptcy court decision, and Massachusetts did the same thing. So the only two cases that I've been able to find state that in a state where there's preemption, where the state is given an exemption, the state statute of limitations, if it's longer, applies. I mean, if it were shorter, if the Massachusetts limitations were six months, then it wouldn't apply. But since it's longer, it would. I thought you were relying on the doctrine of equitable estoppel as to the federal statute. Am I incorrect about that? No, I'm relying on a bunch of doctrines. That one also, I don't just have one, but the equitable estoppel also, because this isn't simply a case where someone is selling a house, and the buyer knew they were buying a house, and the bank forgot to give them truth in lending disclosure. This is a case in which the buyer was told, this is a lease. I mean, they were told that right up to the point of being sued when we went to purchase the lease. They said, this is a lease. So it's not a situation, I mean, even most attorneys reading this lease would think it was a lease. I mean, it requires significant thought to figure out what's going on here. That's why it's such a sophisticated time. So to say that a buyer, when he's being told, this is a lease, you're leasing it, sign these lease provisions, is somehow supposed to know that that's not true. I mean, that's just simply not equitable. It's an outright fraud. It's a misrepresentation. They're calling a credit sale a lease. But our equitable estoppel jurisprudence in this context seems to require that there be undisclosed facts. Everything here was disclosed in the lease. You're just saying that your client was unable, was not sophisticated enough, to interpret that even though it said it was a lease, it really wasn't a lease. That may be unfortunate, but that's not a basis for equitable estoppel. If so, you'd have equitable estoppel in any breach of contract case. Sure, because the plaintiff could always say, I didn't understand the contract that was misleading. No, but at least they say it was a contract. If they say this is a contract to purchase a space station, and it turns out to be a contract to purchase a house, and they don't even know it, and everything is set up. But if it's disclosed in the documents saying you don't know it doesn't make it so. It also doesn't give you a basis for equitable estoppel. I'm sure if they say this is a contract to sell a spaceship, and it turns out to be the house, and the contract shows a picture of a spaceship and gives the dimensions of a spaceship, and calls it a spaceship, and it treats it as a spaceship, and fails to give federally required disclosures that it's not a spaceship, the consumer is entitled to rely that he's buying a spaceship. I mean, the whole purpose for the truth in lending here is to tell consumers what's going on, to say that the consumers that fought for not knowing what was going on defeats the whole purpose. I mean, why even have a truth in lending statute? I mean, it's true of any – you can show up at a closing, and you can bring a calculator. You can figure out the interest rate on your own if you wanted to. You can buy an algorithm. You can figure it out. You can figure out what the total interest would be. I mean, none of that is necessary. A consumer could figure all that out on their own if they had to, but the point is they can't. I mean, 40 years ago, the legislature decided that that's just an excuse for very sophisticated cons, and they created truth in lending. So you're supposed to disclose all that. You're supposed to disclose its credits there. You're supposed to disclose what the interest is. You're supposed to disclose how much it's going to cost the consumer. If they don't do it and the consumer misses it, it's not the consumer's fault. I mean, it defeats the whole purpose of the statute, and I just don't, frankly, judge it. I really don't. That argument just goes back to the buyer beware, and it's a very sophisticated society, and if you're going to start doing that, I mean, why have any? Truth in lending imposes certain obligations, but one of those obligations is the obligation of the prospective plaintiff to act in a reasonable time period. That time period is set by Tyler at three years. There was no action here within three years. You're now seeking an exception to that. The exception to that that you say applies is equitable estoppel. That's a very narrow doctrine, which under our case law requires very specific showings, one of which is that something is hidden from the plaintiff, all right? And there was nothing hidden here. What you're complaining about was all spelled out. You just say that your client wasn't capable of adding it up or that they mislabeled certain things. They called it a lease. You say they should have called it a credit sale. But there's nothing in your brief that suggests to me that equitable estoppel, in its most generous interpretation, could apply here. Not only equitable estoppel, I want misrepresentation. The whole purpose of truth in lending is to tell the — Go ahead. Answer the question. The whole purpose of truth in lending is to disclose to the consumer what's going on. It's not to put an obligation on the consumer to look at a small print document that I guarantee you 95 to 99 percent of attorneys would not be able to interpret themselves and figure out what was going on. Thank you. Thank you. Good morning, Your Honor. Chris Allen on behalf of the FLEs. If it pleases the Court. I'd like to start with the statute of limitations piece because that's where Your Honor started. First of all, I think it's clear that it's a one-year statute of limitations, not a three-year statute of limitations. I think it's equally clear that there is no basis for any equitable tolling. The Saloy case, which Justice Salo participated in as well, involved, I think makes this abundantly clear, that involved a mortgage transaction that involved things like negative amortization rates and having to calculate interest on the basis of what the market rate for interest and those kinds of things were. That process was described in the transactional documents in that case, and that was enough for this Court to say that the facts were apparent to the plaintiff in that case. All right. But, counsel, assume that the Tyler statute of limitations bars the maintenance of the Tyler account itself. You then have a series of other accounts under Massachusetts law. That's correct, Your Honor. Okay. And Massachusetts' statute of limitations is long enough to make this case timely. All right. I think it is for the state law claims, Your Honor. Yeah. That's what I'm saying. Not for the TILA claims. Yeah. For the state law. Yeah. We're not challenging the statute of limitations as it relates to the state law claims, which were brought under the CCDA and then sort of a bootstrap claim under Chapter 9. You're conceding that the state, that Massachusetts' own statute of limitations applies to the state law claims. Right. But I don't concede that that applies to the TILA claim. Just to be clear. Okay. No, no. The TILA claim is different. Go ahead. If there is no federal jurisdiction because it's barred by the statute of limitations, what is the basis for the assertion of jurisdiction over the state law claims? Normally, the district court would dismiss the pendent state law claims. And that's the way I understood this case. Perhaps I misunderstood it. Is there an independent basis for federal jurisdiction over the state law claims? Well, this issue has not been briefed either at this level or the district court level. And so what I would say to that, Your Honor, is I think the logical basis for jurisdiction would be CAFA, Class Action Fairness Act. No, that does not apply here. I've taken a look at that. We're not anxious to have federal courts decide state law claims, especially complicated ones that involve policy issues. Fair enough, Your Honor. There seems to me to be some attempt in the papers in this case to make out a case for diversity jurisdiction. I realize it's not brief, but I saw some effort at that. Is there a basis for diversity here? You know, candidly, Your Honor, I haven't looked into it because it's never been raised. And obviously we didn't file the lawsuit. As I think Your Honors are aware, there was a parallel state court proceeding that involved a different plaintiff. Yeah, but we're obligated to look at our jurisdiction. I fully appreciate that. And, you know, I guess candidly the best I can say is while I completely understand why you're asking that question, unfortunately I don't have an answer for you on that issue today. I don't know that I necessarily disagree with the notion that there isn't federal jurisdiction, if you excuse the triple negative in that sentence. But I think that's a question best directed to Mr. Giviacci. Well, all right, let me suggest this. Under 28 U.S.C. 1337, even when it dismissed the federal claim, the district court could have exercised supplemental jurisdiction. I understand that the district court didn't make any finding to that respect. But for purposes of this argument, why don't you assume that's what the district court did and use the rest of your time on the merits?  Thank you, Your Honor. So I think in that instance what remains then is solely the state court claims, which are the claims based under the CCDA and the RISA and Chapter 93A on sort of a bootstrap, or derivative basis I should say. I think the SJC has made very clear what the framework for evaluating those claims are. The court in Silva has stated that you have to focus only on the party's obligations. And so what that means is you can't look at what may happen in a circumstance where at least like this one grants the lessee an opportunity to renew. You can't consider those hypothetical circumstances. You have to focus on what the obligation was. Here the obligation was one year. If you look at that one-year term, then all of the statutes have the same standard for defining what a credit sale is, and it's very straightforward. To establish that it is a credit sale, you have to establish that, one, you can acquire the good, in this case the water heater, for no or nominal consideration at any point before the end of the term. And, two, you have to establish that during the term of the lease the lessee pays an amount that is substantially equivalent in value to the value of the good. And the SJC has made clear that you've got to establish both of those requirements. Here none of the requirements are established. The lease that the lessee, that Ms. Spillabody, would have paid to acquire the water heater during the lease term would have been about $650. As alleged in the complaint, the- What was the value of the heater? Pardon me? What was the actual value of the heater? As alleged in the complaint, Your Honor, it's, quote, $400 to $500. So the acquisition price is in excess of what the alleged retail value of the good is, I would submit, per se. That can't be nominal consideration. On the second prong, substantial equivalency, as the lease states, Ms. Spillabody had an obligation to lease it for 12 months if she did so. The aggregate amount she would pay in rent is $204. And as I think the district court properly found, $204 is not the substantial equivalent of $400 to $500. So on both those scores, as it relates to the state law claim, the claim does not meet the- The claim is not- The plaintiff has not established that the requirements of a credit sale are met here. It's still a very bad deal for the consumer. Yes? An intelligent consumer looking at this would probably, unless driven by poverty, not to pay more than $200, would not rationally make this choice. I would disagree at the risk of going outside the pleadings, Your Honor. I think if you look at this transaction, it's not just getting the use of the water heater. It's also having the ability to have it repaired. And so some people, and frankly, and this is outside the pleadings, but since you asked, if you look at the demographics of the customer base, it's not actually the demographic that you've described. It's instead folks who have elected to enter into this transaction because they like having sort of the peace of mind. They don't have to worry about what happens. They can call someone if there's a problem. That's right. And that someone is always there. And if it happens in the middle of the night or the middle of the night, in the middle of the winter, they don't have to worry about whether they can get the plumber there or find a plumber to get there. So respectfully they don't want to own the water heater and have the obligation to find a plumber. Correct, Your Honor. Although they have the right to do that if they ultimately decide, of course, that that's the route that they want to go. So one shouldn't think of this simply in terms of the provision of a water heater. It's a water heater and a repair contract all wrapped into one. That is absolutely correct. Why isn't this in the record? It would seem to me to be something that one would want explained. Well, Your Honor, I'm constrained by the complaint because this comes before you on a 12v6 motion. So it's, you know, I guess let me retract that statement. I would say it is in the record. I think if you look at the contract. This becomes clear by reading the contract. Yes, if you look at, and this is page 123 of the appendix, section 10 of the agreement describes the rights and obligations as it relates to repair and maintenance. Okay. Okay. With that, I have 30 seconds left. If there are any more questions, I'd be more than happy to address them. Your gift to the court is appreciated. Thank you, Your Honor. The statute of limitations issue was never decided in the district court. So, I mean, that was pretty much a side issue up here in the appeal. Nonetheless, federal courts, both district and circuit, have an independent obligation to be sure there is federal jurisdiction. Why don't we bypass that momentarily? Judge Selye asked your opponent to bypass it and reach the merits. You've got a minute. Spend your minute on the merits. Well, just to emphasize that I did plead diversity of jurisdiction. If you look at the jurisdiction paragraph in the complaint, all the defendants are a principal place of business and corporation. They're out of the state, and they do DBAs in Massachusetts. So we did get into it. But since the district court never bothered to issue a decision on that, I can only try to concentrate on the main points. On the merits, this stuff about the – some of these leases go back 30 years. No one pays 30 years every month for a hot water heater because of repair options. May I finish, Your Honor? Yes, you may. If you look at the pled facts of the complaint, they sell separately maintenance agreements for every appliance in your house for $8 a month that they don't – well, they tell people about. And some people get the lease and the maintenance. So this isn't – these leases go on forever. These hot water heaters have a life expectancy of 10 or 20 years. No one pays $2,000 for a $200 water heater to not worry about maintenance. They pay $2,000 for a $200 water heater because you're – I thought it was a $300 to $400 water heater. No, this includes installation. The hot water heater itself is only worth about $200. But for the plumber and all that, may cost you $300, may cost you $400. But even if you go to $400, no one pays $2,000 over the life of a $200 water heater for the security of knowing that if it breaks down, they can have some utility come in and replace it with another $200 water heater because that's all you do. I mean, you don't repair hot water heaters. You don't put duct tape on them or super glue. If a $200 water heater breaks, you rip it out and you put in another one. So this is a very sophisticated con that they've been getting away with for three years. And I respectfully submit that it's time to stop. Thank you.